655 A.2d 112

SUN PIPE LINE COMPANY

v.

TRI–STATE TELECOMMUNICATIONS,
INC. and Davis Enterprises, Inc.

v.

E.A. DESIGN, LTD. and Pennsylvania One Call Systems, Inc. and
Maple Shade Cable Company, Inc. and Newtown Township and
Newtown Cablevision, Inc. and Jan Gouza, and Pickering Corts
& Summerson, Inc.

Pier CIPRIANI and Ann Cipriani, His Wife, in Their Own Right
and As Parents and Natural Guardians of Michael Cipriani,
David Cipriani and Tricia Cipriani, Minors and Robert Leipholt
and Susan Leipholt, His Wife, in Their Own Right and as
Parents and Natural Guardians of Michael Leipholt, Melissa
Leipholt and Jennifer Leipholt, Minors, and James J. Rowley
and Gloria Rowley, His Wife, and John M. Atkins and Kathleen
M. Atkins, His Wife, and George F. Hepp, Jr. and Marylynne
Hepp, His Wife, and Pat G. Morales, Jr. and Divina Morales,
His Wife, and George S. Hartman and Martha Hartman, His
Wife, and Joseph P. Adams and Charlotte Adams, His Wife and
Richard Foley and Jayne Foley, His Wife,

v.

SUN PIPE LINE COMPANY and Tri–
State Telecommunications, Inc.
and Davis Enterprises, Inc.

v.

E.A. DESIGNS, LTD. and Pennsylvania One Call Systems, Inc.
and Maple Shade Cable Company, Inc. and Newtown Township
and Newtown Cablevision, Inc. and Jan Gouza, and Pickering
Corts & Summerson, Inc.

48

SUN COMPANY, INC. and Sun Pipe Line Company

v.

Harold DAVIS and Roger Davis

v.

E.A. DESIGNS, LTD. and Pennsylvania One Call Systems, Inc. and Maple Shade Cable Company, Inc. and Newtown Township and Newtown Cablevision, Inc. and Jan Gouza, and Pickering Corts and Summerson, Inc. and Tri–State Telecommunications, Inc.

Appeals of SUN PIPE LINE COMPANY
and Sun Company, Inc.

Appeals of E.A. DESIGN, LTD.

Superior Court of Pennsylvania.

Argued Oct. 18, 1994.

Filed Dec. 28, 1994.

Reargument Denied March 2, 1995.

50

52

Bruce J. Chasan, Kenneth Scott, and Albert M. Saltz, Wilson, Elser, Moskowitz, Edelman and Dicker, Philadelphia, for Sun Pipe Line Co. & Sun Co.

Mitchell S. Pinsley, Philadelphia, for E.A. Designs, Ltd. & PA One Call Systems, Maple Shade Cable Co. and Newtown Twp. & Newtown Cablevision, Inc.

Gary Gremminger, Philadelphia, for Jan Gouza, Pickering Corts &`Summerson, Inc. and Tri–State Telecommunications, Inc.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

HESTER, Judge:

Sun Pipe Line Company and Sun Company, Inc. (collectively "Sun") appeal and E.A. Design, Ltd. ("Design") cross-appeals from two judgment orders entered in these consolidated civil actions. The first order was entered on December 29, 1993; the second order was entered on January 25, 1994, and amended the first one. The four appeals were consolidated for our review. Neither appellant has raised any issues relating solely to the December 29, 1993 order; accordingly, we dismiss as moot the appeals from that order. We revise the January 25, 1994 order to provide for post-verdict interest on the total verdict at an annual rate of six percent and to impose joint and several liability as to the entire verdict, including delay damages. In all other respects, the judgment is affirmed.

This action arose as a result of a construction accident which occurred on November 12, 1982, during excavation work performed to install cable for a cable television system. The company hired to perform the excavation work by the cable franchisee ruptured one of Sun's pipelines, and 50,000 gallons of unleaded gasoline spilled into the area.

As a result, a class action was instituted by affected homeowners. The class action was instituted against Sun, and the defendants in that action either initially or eventually included the various entities and persons involved in the design, installation, and approval of the cable system which was being installed when the pipe was ruptured. In addition, Sun instituted a separate action to recover for its damages, including the costs of the gasoline, repairing the rupture, and cleaning

up the spill. The action instituted by Sun was consolidated with the class action. Finally, some affected homeowners opted out of the class action and instituted separate actions which never were consolidated with this action.

The trial court certified the homeowners as a class as to the issue of liability for the accident but determined that the damages of each home-owner would have to be established at separate trials. In September and October, 1986, the issue of liability for the accident was submitted to a jury. On October 20, 1986, the jury apportioned liability for the accident as follows: 1) forty percent to Tri–State Telecommunications Inc., which performed the underground cable installation; 2) eighteen percent to Sun, for failing to take appropriate actions to insure against rupture of its pipeline during utility excavation work; 3) fifteen percent to Jan Gouza and his firm, Pickering Corts & Summerson, Inc. (collectively "Gouza"), who was the township engineer responsible for approving the cable network installation plan; 4) fourteen percent to Design, which was hired to prepare the construction maps for the cable network; and 5) thirteen percent to Davis Enterprises, Inc., the owner of the cable franchise. We affirmed this liability determination in *Cipriani v. Sun Pipe Line Co.*, 393 Pa.Super. 471, 574 A.2d 706 (1990).

During the liability phase, Tri–State and Davis settled with Sun for $4,500,000. Gouza has insurance coverage for the incident with limits of $1,000,000, and Design has insurance coverage for the incident with limits of $350,000. Gouza assigned to Sun his bad faith claim against his insurer for its failure to offer its policy limits in a timely fashion to settle the action against him, and in exchange, Sun has agreed not to execute its judgment in the action against him individually.

Design's insurer offered its policy limits of $350,000, on September 28, 1988. Gouza's insurer offered its policy limits of $1,000,000 on February 16, 1989. Sun rejected the tender of the policy limits. The class-action case was settled in 1991, and the final opt-out case was settled in October, 1992. The jury trial as to Sun's damages against the two remaining tortfeasors, Gouza and Design, commenced on December 14,

1992, and on December 21, 1992, the jury awarded Sun $8,080,362.37 in damages, including the following:

1. What do you find to be the fair and reasonable amount of damages incurred by Sun Pipe Line Co. for project management, bioreclamation, air monitoring, laboratory analysis, geological and photography services, well drilling, installation and well closure, purchase, rental and maintenance of scientific equipment, office expenses, cleanup and site maintenance, homeowner damages, lost product, labor costs, long term monitoring and closure costs?

$7,679,500

. . . .

3. What do you find to be the net fair and reasonable amount of damages incurred by Sun Pipe Line Company for its lost investment opportunity in connection with its purchase of seven homes, the maintenance on those properties, and later resale of those seven homes?

$382,853.

Sun then filed a motion to mold the verdict to reflect the joint and several liability of Design and Gouza for twenty-nine percent of the verdict, in accordance with the liability determination of the previous jury. Sun also filed a motion for delay damages under Pa.R.C.P. 238 and for reasonable expenses under Pa.R.C.P. 4019(d), the rule imposing sanctions for discovery violations.

On December 29, 1993, the trial court molded the verdict and entered judgment as follows:

## JUDGMENT AND ORDER

AND NOW, this 29th day of December, 1993, upon consideration of Sun Pipe Line Company's Motion to Mold Verdict and Motion for Delay Damages Pursuant to Pa. R.Civ.P. 238, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. The damages awarded by the jury on December 21, 1992 are $8,080,362.37.

2. Additional Defendant E.A. Design, Inc., Jan Gouza and Pickering, Corts & Summerson, Inc. are jointly and severally liable for 29% of the $8,080,362.37 or $2,343,305.00.

3. Delay damages are awarded to Plaintiff pursuant to Pa.R.Civ.P. 238 from November 12, 1983 (one year from the date of the accident) until September 28, 1988, (the date upon which Defendants offered policy limits) on 29% of $7,679,500.00 or $2,227,055.00.

4. Interest on the $2,227,055.00 shall be calculated as follows:

| | | |
|---|---|---|
| 11–12–83 to 12–31–83 | rate of 12.5% | $ 37,375.55 |
| 1–1–84 to 12–31–84 | rate of 12% | 267,246.60 |
| 1–1–85 to 12–31–85 | rate of 11.75% | 261,678.96 |
| 1–1–86 to 12–31–86 | rate of 10.5% | 233,840.78 |
| 1–1–87 to 12–31–87 | rate of 8.5% | 189,299.68 |
| 1–1–88 to 9–28–88 | rate of 9.75% | 163,009.74 |
| | | $1,152,447.00 |

5. Interest on the verdict shall accrue from the date of the verdict at the rate of 6% per annum.

6. Reasonable expenses to be awarded to Plaintiffs, pursuant to Pa.R.Civ.P. 4019(d), not including attorneys fees, are fixed at $74,415.14 pursuant to affidavit of Bruce J. Chasan, Esquire, of March 1, 1993, (paragraph 57).

The trial court then issued a revised judgment on January 25, 1994, as follows:

### REVISED JUDGEMENT AND ORDER

AND NOW, this 25th day of January, 1994, upon consideration of Sun Pipe Line Company's Motion to Mold Verdict and Motion for Delay Damages Pursuant to Pa.R.Civ.P. 238, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. The damages awarded by the jury in its verdict of December 21, 1992 are $8,080,362.37.

2. Additional Defendant E.A. Design, Inc., Jan Gouza and Pickering Corts & Summerson, Inc. are jointly and severally liable for 29% of the $8,080,362.37 or $2,343,305.00.

3. Delay damages are awarded to Plaintiff pursuant to Pa.R.Civ.P. 238 from November 12, 1983 (one year from the date of the accident) until September 28, 1988, (the date upon which Defendants offered policy limits) on 29% of $7,679,500.00 or $2,227,055.00.

4. Interest on the $2,227,055.00 shall be calculated as follows:

| | | |
|---|---|---|
| 11–12–83 to 12–31–83 | rate of 12.5% | $ 37,375.55 |
| 1–1–84 to 12–31–84 | rate of 12% | 267,246.60 |
| 1–1–85 to 12–31–85 | rate of 11.75% | 261,678.96 |
| 1–1–86 to 12–31–86 | rate of 10.5% | 233,840.78 |
| 1–1–87 to 12–31–87 | rate of 8.5% | 189,299.68 |
| 1–1–88 to 9–28–88 | rate of 9.75% | 163,009.74 |
| | | $1,152,451.31 |

5. Interest on the verdict, including delay damages as determined in paragraph 4 hereof, or $2,343,305.00 plus $1,152,451.31 shall accrue from the date of the verdict. Interest shall not accrue on sums awarded for reasonable expenses.

6. Reasonable expenses to be awarded to Plaintiffs, pursuant to Pa.R.Civ.P. 4019(d), not including attorneys fees, are fixed at $74,415.14 pursuant to affidavit of Bruce J. Chasan, Esquire, of March 1, 1993, (paragraph 57). Additional reasonable expenses are awarded to Plaintiffs in the sum of $3,951.36 pursuant to supplemental affidavit of Bruce J. Chasan, Esquire, of April 12, 1993.

Sun filed appeals from both judgments. Design filed cross-appeals from both judgments. In its appeals, Sun raises five issues for our consideration, and Design also raises five issues in its cross-appeals. In order to resolve these appeals in a logical and orderly fashion, we will address all contentions relating to the same matters together.

Before we address the issues, however, we will make two observations. First, it is time to end this matter as it has been twelve years since the accident. In this appeal, we have endeavored to avoid a remand as we have concluded that little or nothing will be accomplished by such action. Enough time in our court system has been consumed.

Second, this has been a complex case, and we believe that the trial court's final judgment achieves a fair and equitable resolution of the competing equities involved. Contrary to the implication in Sun's brief, Gouza and Design were not unreasonable in proceeding through the liability phase of this litigation. Their efforts to limit or absolve their own liability, in light of the primary liability of the other parties involved, are completely understandable.

Furthermore, in this appeal, Sun attempts to appear as the innocent, uncompensated victim in this saga, and we do not accept this portrayal. Sun ignores its own fault in the 1982 accident, and the money it already has received. The first jury determined that Sun was more responsible for the accident than Gouza and Design due to the fact it failed to join Pennsylvania One–Call System, and it designated the location of its pipeline inadequately. We affirmed this liability determination in the prior appeal. In addition, Sun recovered $4,500,000, in excess of one-half of its damages, when it settled with Tri–State and Davis. Sun was offered an additional $1,350,000, the policy limits of the insurers, from Design and Gouza by 1989.

■ The first set of issues concerns the trial court's assessment of delay damages. Design contends that Rule 238 does not apply to this litigation due to the nature of the action and the type of relief sought by Sun. Rule 238 provides in relevant part (emphasis added):

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death *or property damage*, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the

verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.

Design's argument as to the applicability of Rule 238 to this action is two-fold. Design begins with the statement that Rule 238 "should not be applicable to indemnity and contribution actions." Cross-appellant's brief at 36. It then argues that even if Rule 238 applies to indemnity and contribution actions, it should not be applied to this action, constituting "environmental litigation," since the purpose of the rule is to eliminate court congestion, and environmental litigation occupies a small percentage of docketed cases.[1] *Id.* at 40.

Thus, the first part of the argument contains a factual assumption that this case is one of indemnity and contribution. The second argument contains a policy assumption that only cases of a type consuming court time fall within Rule 238.

■ We reject the first argument because this case is not one involving solely indemnity and contribution. There is no question that this case has a component part that involves indemnification and contribution since Sun recovered for sums expended in repairing the damage caused to the property of people other than itself, the plaintiff-homeowners, and a portion of the damage award is its claim for money due as a result of the class action. To the extent this action does involve Sun's contribution claims as a joint-tortfeasor, the action does resemble a contract action for money due, wherein Rule 238 does not apply. *See, e.g., Reliance Universal, Inc. v. Ernest Renda Contracting Co.,* 308 Pa.Super. 98, 454 A.2d 39 (1982) (Rule 238 not applicable in contract action); *Rizzo v. Haines,* 357 Pa.Super. 57, 515 A.2d 321 (1986) (Rule 238 not applicable in legal malpractice action), *aff'd,* 520 Pa. 484, 555 A.2d 58 (1989); *Wainauskis v. Howard Johnson Co.,* 339

---

1. Design also argues that certain periods prior to tender of the policy limits of its insurer are excludable under Rule 238. However, it is clear that none of its claims regarding excludable time fall within the ambit of Rule 238(b), which defines when time is excludable, *see* brief of cross-appellant at 43–44, and we reject those claims.

Pa.Super. 266, 488 A.2d 1117 (1985) (Rule 238 does not apply to an action for malicious prosecution).

However, this action is more than one involving contribution and indemnification. Sun also instituted a separate action for its own property damage caused by the pipeline rupture, and this action was consolidated with that of the homeowners. The trial court assessed delay damages on the $7,679,500,[2] which the jury awarded for the following:

> [T]he fair and reasonable amount of damages incurred by Sun Pipe Line Co. for project management, bioreclamation, air monitoring, laboratory analysis, geological and photography services, well drilling, installation and well closure, purchase, rental and maintenance of scientific equipment, office expenses, cleanup and site maintenance, homeowner damages, lost product, labor costs, long term monitoring and closure costs[.]

Thus, the damages are a hybrid award of Sun's own property damage and its contribution claims as a joint-tortfeasor in the class action. The real issue is whether Rule 238 should be applied in this "hybrid" case. In resolving this issue, we first look to the language of Rule 238 itself, which states that "[a]t the request of the plaintiff in *a civil action seeking monetary relief for bodily injury, death or property damage,* damages for delay shall be added to the amount of compensatory damages awarded...."

These actions were instituted by plaintiff-homeowners for personal injuries and property damage. Sun's consolidated case similarly was instituted for both its property damage consisting of the lost gasoline and pipeline rupture and attendant environmental clean-up costs. Eventually, damages were recovered for Sun's payments to the homeowners, which are in the nature of contract damages, and for its own property

---

**2.** In light of this, we are puzzled by Design's argument, which is made at page forty-five of its brief, that delay damages were improperly assessed against the lost profit award of $382,853. As indicated clearly in paragraph three of the judgment, the court awarded delay damages only on the $7,679,500 awarded in the first paragraph of the jury verdict. Thus the court did not assess delay damages against Design for the $382,853 awarded for Sun's lost investment interest.

damage. Nonetheless, Rule 238, on its face, applies since these actions were brought for bodily injury and property damage.

In addition, in concluding that Rule 238 is applicable to this action, we are guided by the fact that Rule 238 is designed to remedy *two* evils. As noted above, Design chose to focus on one, preventing court congestion, in presenting its argument. The second, as Sun notes, involves a substantive right of the prevailing plaintiff. Rule 238 is designed to compensate the prevailing plaintiff for loss of use of funds that the jury verdict reflects were owed by the defendant to the plaintiff. *See Schrock v. Albert Einstein Medical Center,* 527 Pa. 191, 589 A.2d 1103 (1991) (fundamental fairness requires that plaintiffs receive interest on what is essentially their money for the period defendants held it until trial). Thus, Rule 238 is designed to award prejudgment interest, which normally was not available in an action involving personal injury and property damage.

Even if delay damages were not recoverable, Sun would be entitled to some form of prejudgment interest.

A review of the case law reveals that the trend of the courts has been to take an equitable approach in determining interest as an element of damages. The Pennsylvania courts have also adopted this approach, and in equity cases, the award and rate of interest allowed is at the discretion of the chancellor. An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties, but the decided trend of courts of law and courts of equity has been to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case. Unless a case be found, which is a conclusive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing.

*Smith v. Mitchell,* 420 Pa.Super. 137, 144–145, 616 A.2d 17, 21 (1992) (citations and emphasis omitted).

Therefore, even if this case were construed as one involving purely contract principles of indemnification and contribution, Sun, in fairness and equity, should be compensated for loss of use of the funds. *See also Spang & Co. v. USX Corp.,* 410 Pa.Super. 254, 599 A.2d 978 (1991) (it is up to the discretion of the trial court to award prejudgment interest in a contract action even though plaintiff's recovery was not for liquidated amount). At this point, however, we have no intention of remanding to the trial court for a determination of whether prejudgment interest should be awarded, in light of the unique circumstances of this case, as its award of delay damages fulfills the same purpose.

Whether it is awarded as Rule 238 delay damages or as contractual prejudgment interest, Sun is entitled to be compensated for the fact that it has not had the money the jury determined that it was owed as of 1982. The award of this element of damages hardly can be viewed as "punitive," as suggested by Design, who has had the benefit of using the money since the 1982 accident. Brief of cross-appellant at 42. Sun's entitlement to interest also has nothing to do with Design's pre–1988 good faith efforts to determine its liability. It simply has to do with the fact that Design had the use of this money.

█ We now discuss Sun's arguments as to delay damages. On September 28, 1988, Design's insurer offered its policy limits of $350,000 and on February 16, 1989, Gouza's insurer offered its policy limits of $1,000,000. The trial court, as noted above, stopped the accrual of delay damages against both parties as of September 28, 1988.[3] Sun suggests that since the verdict against the two defendants, $2,343,305, was more than 125% of the offers, $1,350,000, delay damages continued to accrue until the time of the verdict. We disagree, based upon the series of cases wherein insurers offered their policy

3. At no point in its brief does Sun argue that Gouza's delay damages should have ceased as of February 16, 1989.

limits and the insureds were insolvent. *Miller v. Hellman,* 433 Pa.Super. 539, 641 A.2d 592 (1994); *Krichten v. Wolpert,* 431 Pa.Super. 194, 636 A.2d 196 (1994); *Krysmalski by Krysmalski v. Tarasovich,* 424 Pa.Super. 121, 622 A.2d 298 (1993); *Berry v. Anderson,* 348 Pa.Super. 618, 502 A.2d 717 (1986).

In those cases, we held that a plaintiff may not be awarded delay damages pursuant to Rule 238 *after* the date the defendant's insurer offers its policy limits if the trial court determines that due to the defendant's indigency, the offer of the policy limits was the full amount available for payment of the plaintiff's claim and it was impossible for the defendant to have offered more.

Sun raises a number of contentions as to the propriety of the trial court's decision to stop the accrual of delay damages. The first two are that: 1) the trial court should have performed an evidentiary hearing to determine the insolvency of Gouza and Design as of the date of the offer, and 2) the action was improper in the absence of an indication that neither defendant could have offered more.

We reject these arguments. Gouza transferred to Sun his bad faith claim against his insurer, and in exchange, Sun agreed not to execute any judgment which it obtained against the personal assets of Gouza. *See* Appellant's brief at 16. Therefore, whether Gouza is bankrupt or could offer more is totally irrelevant. Gouza is not liable to Sun, and Sun can get nothing more from him. Further, the fact that Design is bankrupt is well documented. *See* Reproduced Record at 1965a–67a, 1969a–73a; Supplemental Reproduced Record at 76b–90b, 135b–143b.[4] It would be an exercise in futility to remand for an evidentiary hearing on Design's bankrupt status or ability to tender money. *Compare Krysmalski v. Tarasovich, supra* (evidence indicated that defendant had

4. An affidavit of Max Spector, former president of Design, indicates that as of October, 1989, Design had a negative balance sheet of approximately $180,00 and that it went out of business in 1990. It further indicates that throughout the entire course of this action, it had no assets to offer.

personal asset, $60,000 apartment building, which he failed to offer in addition to insurance limits).

Sun also argues that this case is distinguishable from the above line of cases because the liability limits were not offered until after the liability trial. This is a distinction without a difference. The fact is that the full policy limits were tendered to Sun, and it had the immediate right to the money. At that point, it was Sun's fault it lost the right to the use of that money. *Berry* and its progeny make no distinction as to what phase of the proceedings the policy limits are tendered. If delay damages have started to accrue, they cease under the reasoning applied in those cases when full policy limits are tendered, and the plaintiff could obtain no further money against the defendant personally. That is what occurred here. If plaintiff can get nothing more than what is offered, there is no purpose in continuing to assess delay damages. The maxim, "Cessante ratione legis, cessat et ipsa lex" applies.[5] *Hengst v. Hengst*, 491 Pa. 120, 420 A.2d 370, 371 (1980). Sun's arguments on the amount of delay damages assessed are rejected.

The next set of issues concerns the application of Pa.R.C.P. 4019(d). Sun argues that it should have been awarded the approximately $475,000 in attorney's fees it expended in the damages trial as a discovery sanction due to the failure of Gouza and Design to admit to the amount of Sun's damages, which it outlined in a set of requests for admissions sent to those two parties.

In these requests for admissions, the two defendants were asked to admit not only the amount but the reasonableness and necessity of the costs incurred. R.R. at 1689–1704. Thus, Sun's request for admissions amounted to a request for an admission to the very issue at the damages trial.

Sun posits, "[Design] and Gouza did not admit any significant portion of [Sun's] requests for admissions. [Design] and Gouza refused even to admit the amount of [Sun's] losses despite the fact both [Design] and Gouza were provided with

5. The reason for the law ceasing, the law itself also ceases.

ample opportunity to review and evaluate the expense documents. As a result, [Sun] was required to call a number of witnesses to testify not only as to the necessity and reasonableness of the damages, but also as to the amount of the damages incurred by [Sun.]" Appellant's brief at 36.

That is what every party has to do at every trial—prove its case. A jury trial cannot be avoided by the promulgation of a set of requests for admissions where a defendant has to agree that plaintiff does not have to meet its burden of proof at the upcoming trial. Sun had a burden of establishing its damages by a fair preponderance of the evidence. *See Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987). In fact, the jury awarded $641,117.08 *less* than Sun requested in damages, establishing that Design and Gouza were correct in refusing to "admit" to the necessity, reasonableness, and amount of Sun's damages.

Furthermore, a trial court may not, as a discovery sanction, award general counsel fees incurred during trial, and Sun was not entitled to recover its trial-related attorney's fees for misconduct in discovery. *See Commercial Trading Co. v. Milsan Mills Inc.,* 327 Pa.Super. 407, 476 A.2d 16, 20 (1984). Only counsel fees incurred *as a direct result* of the discovery violation should be imposed as a discovery sanction except in the most egregious cases. *Id.* In our system of jurisprudence, the winning litigant simply is not entitled to attorney's fees from the losing litigant.

On the other hand, we also reject Design's claim that the award of $78,366.50 in expenses under 4019(d) was improper. It appears that certain expenses were not contested at trial and that Design and Gouza eventually stipulated as to some of the fees and expense incurred in the clean up during the testimony of the witness called to establish those damages. R.R. at 1074a–1077a. Thus, if Design and Gouza thoroughly answered the requests for admissions by admitting to the portions of the damages which they were not going to contest at trial, Sun could have avoided some expenses at trial.

It is settled that the specific sanction to be imposed under Rule 4019 is a matter left to the discretion of the trial court. *Pride Contracting, Inc. v. Biehn*, 381 Pa.Super. 155, 553 A.2d 82 (1989). Herein, we defer to the trial court's assessment that the failure of Design and Gouza to more carefully answer the requests for admissions warranted the imposition of Sun's trial expenses.

In its appeal, Sun submits that the trial court erred in determining that Gouza and Design were not jointly and severally liable for the delay damages portion of the verdict. In its appeal, Design not only contests this argument, it contends that the trial court erred in not stating explicitly in the order that Design and Gouza are *not* jointly and severally liable for delay damages. Sun has taken the correct position on this issue. Defendants are jointly and severally liable for delay damages. *Tindal v. Southeastern Pennsylvania Transportation Authority*, 385 Pa.Super. 94, 560 A.2d 183 (1989) (multiple defendants are jointly and severally liable for entire amount of delay verdict, including damages).

Design suggests that it is not jointly and severally liable for the delay damages based on our holding *Jazbinsek v. Chang*, 416 Pa.Super. 300, 611 A.2d 227 (1992). In *Jazbinsek*, we ruled that a settling defendant was not liable for delay damages accruing *after* the defendant made an offer which operated to toll the accuracy of delay damages. However, the delay damages at issue herein were imposed for the period *prior* to Design's offer. It is clear that Design is jointly and severally liable with Gouza for the delay damages imposed.

Finally, both appellants take umbrage with the trial court's actions with respect to post-verdict interest. Sun's position is that the trial court, at the least, should have expressly stated in its January 25, 1994 order that post-verdict interest on the award will accrue at six percent a year. Sun also posits that it is entitled to post-judgment interest calculated under Rule 238 rather than merely at the statutory rate of six percent. We accept Sun's first argument, in light of 42 Pa.C.S. § 8101, and reject its second argument. Pa.R.C.P.

238(a)(2)(i), (ii) (delay damages assessed "up to the date of the award, verdict or decision"); *see also Rivera v. Philadelphia Theological Seminary,* 398 Pa.Super. 264, 580 A.2d 1341 (1990).

 As to post-judgment interest, Design's position is that post-judgment interest is not assessable on the delay damages portion of the judgment. This is incorrect. Delay damages become part of the verdict, under the express language of Rule 238. Pa.R.C.P. 238 ("damages for delay . . . shall become part of the verdict, decision or award"). Post-judgment interest applies to the verdict. 42 Pa.C.S. § 8101 ("a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award . . ."). There is nothing unfair or inequitable in requiring Design to pay interest on money which it owes to Sun. However, as the award of expenses as a discovery sanction is not a part of the verdict, the trial court, in its discretion, was permitted to decline to award interest on that amount.

Accordingly, we enter the following order:

The appeals at 573 and 690 are dismissed as moot. The January 25, 1994 judgment is revised to read that Jan Gouza and Pickering Corts & Summerson Inc. and E.A. Designs, Inc. are jointly and severally liable for the $2,343,305.00 verdict and the $1,152,451.31 in delay damages. Judgment also is revised to read that the amount of interest awarded on the verdict of $3,495,756.31 shall be six percent which shall start to accrue as of the date of the verdict. In all other respects, the judgment entered on January 25, 1994, is affirmed.