## Fischer v. Troiano

C.P. of Lackawanna County, no. 96-CV-753.

*Janine M. Torda,* for plaintiffs.
*George E. Mehalchick,* for defendants.

NEALON, *J.,* January 12, 2000—Plaintiffs, Robert Fischer and Stella Fischer, have filed a motion for a new trial on damages only and a petition for delay damages under Pa.R.C.P. 238 following a verdict in their favor in which the jury declined to award any noneconomic damages. Since the defense medical expert testified that plaintiff, Stella Fischer, sustained a vertebral fracture which took at least three months to resolve, the motion for a new trial on damages only will be granted on her behalf,

but denied with respect to the personal injury and consortium claims of plaintiff, Robert Fischer. In light of the grant of a new trial on damages, the petition for prejudgment interest pursuant to Pa.R.C.P. 238 will be dismissed as moot relative to plaintiff, Stella Fischer, and granted as to plaintiff, Robert Fischer.

## I. FACTUAL BACKGROUND

Plaintiffs, Robert Fischer and Stella Fischer, commenced this litigation based upon a slip-and-fall incident that occurred on April 23, 1994, at the home of defendants, Joseph Troiano and Sophia Troiano, as a result of which Mr. Fischer and Mrs. Fischer sustained personal injuries. In their complaint, Mrs. Fischer sought to recover damages for her medical expenses and pain and suffering causally related to her injuries, whereas Mr. Fischer claimed damages for loss of his injured wife's consortium. Although Mr. Fischer also advanced a separate claim for medical costs and noneconomic damages attributable to his own relatively minor injury, Mrs. Fischer did not assert a cause of action for loss of her husband's consortium.

At the time of trial, the Fischers argued that they were both injured when they simultaneously fell during a bridal shower at the Troianos' home. The Fischers maintained that their falls were caused by an obscured single step which led into a sunken living room, and they offered lay and expert testimony in support of their negligence claims. The Troianos denied any liability for the fall and further posited that the Fischers' alleged injuries were the product of their own contributory negligence.

With respect to the issue of damages, Mrs. Fischer introduced the expert testimony of her family physician, James J. McGraw Jr. M.D., and an orthopedic specialist,

Albert M. Murtland M.D. Both medical experts opined that Mrs. Fischer sustained a chest wall contusion, an aggravation of a preexisting degenerative condition in her lumbar spine, and a compression fracture of the thoracic vertebra at the T-11 level which had been objectively demonstrated by radiographic studies such as x-rays and bone scans. Dr. McGraw and Dr. Murtland also testified as to Mrs. Fischer's symptomatology and the physical restrictions that they had imposed upon her as a result of her injuries. (See transcript of Dr. James J. McGraw Jr. deposition dated 10/2/98, pp. 8-20; transcript of Dr. Albert M. Murtland deposition dated 9/17/98, pp. 12-29.) In addition, Mr. Fischer offered the medical testimony of Matthew T. Kuber M.D. who treated him on three occasions on May 3, 1994, June 6, 1994 and August 28, 1994, for a "contusion to the right elbow" which had completely healed by August 1994. (See transcript of Dr. Matthew T. Kuber deposition dated 10/2/98, pp. 7-13.)

Inasmuch as Mr. Fischer was not claiming a serious or permanent injury, the Troianos did not introduce any expert testimony to rebut the opinions of Dr. Matthew T. Kuber. However, the defense did have Mrs. Fischer examined by an orthopedic surgeon, Jeffrey A. Mogerman M.D., who testified at trial by way of videotaped deposition. Dr. Mogerman disputed the nature and extent of Mrs. Fischer's injuries and opined that her condition had completely resolved as of the date of his examination on July 22, 1998. Notwithstanding that fact, Dr. Mogerman did agree that Mrs. Fischer sustained a compression fracture of her thoracic vertebra which was causally related to the fall on April 23, 1994. (See transcript of Dr. Jeffrey A. Mogerman deposition, pp. 25, 33, 36, 39-40.) Furthermore, although Dr. Mogerman denied that the

fracture caused permanent symptoms, he testified that Mrs. Fischer's injury would have caused some temporary pain that would have subsided within three to five months. (*Id.,* pp. 26, 38.)

At the conclusion of three days of testimony, the jury returned a verdict finding both the Fischers and the Troianos causally negligent. In accordance with the provisions of the Comparative Negligence Act, the jury apportioned the parties' respective liability by allocating 60 percent causal negligence to the Troianos and 40 percent responsibility to the Fischers. With regard to Mrs. Fischer's claim for damages, the jury answered special verdict interrogatories by awarding $24,588.73 for medical expenses, but zero damages for past and future pain and suffering, mental anguish, discomfort, inconvenience, embarrassment and humiliation, and loss of the ability to enjoy the pleasures of life. The jury also assessed zero damages to Mr. Fischer in connection with his loss of consortium claim and awarded $231.70 to Mr. Fischer for his own personal injuries, which amount was equal to the medical expenses that he had incurred. By order dated April 7, 1999, Mrs. Fischer's gross award of $24,588.73 was molded to $14,753.24, and Mr. Fischer's verdict of $231.70 was reduced to $139.02 to reflect the causal negligence which had been assigned to them by the jury.

The Fischers filed a timely motion for a new trial on the issue of damages only and contemporaneously submitted a petition for delay damages seeking an award of prejudgment interest pursuant to Pa.R.C.P. 238. The Troianos filed a response to the Fischers' post-trial motions and alternatively argued via new matter that if a new trial was deemed warranted, it should be granted as to all issues "since the plaintiffs should not have the ben-

efit of a liability verdict which the jury may not have made if the jury were not permitted to award only the compromised amount that the jury did award."

In their motion for a new trial, the Fischers contend that the jury could not return a zero award for noneconomic damages inasmuch as the uncontroverted evidence established that the Fischers suffered injuries which were "of the type that naturally and normally cause pain and suffering." (See plaintiffs' motion for new trial on damages only, ¶4.) The Troianos counter that it was within the province of the jury to gauge the credibility of the witnesses and award no damages to the Fischers for their claims for noneconomic damages. On November 30, 1999, the court reporter filed the transcript of the trial proceedings, and the parties were thereafter afforded 30 days within which to submit their memoranda of law, at which time this matter became ripe for disposition.

## II. DISCUSSION

### (A) *Standard of Review*

When ruling on a motion for a new trial, the court must view all the evidence, and if it concludes that the judicial process has effected a serious injustice, only then should it grant a new trial. *Clack v. PennDOT,* 710 A.2d 148, 151 n.5 (Pa. Commw. 1998). "A new trial is warranted when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Martin v. Evans,* 551 Pa. 496, 501, 711 A.2d 458, 461 (1988); *Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 4 (1994). A new trial should not be granted "because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion." *Martin, supra; Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (1985).

In the context of a motion for a new trial, it is axiomatic that a jury is free to believe all, some, or none of the testimony presented by a witness. *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 637 (1995). However, this rule is tempered by the requirement that the verdict must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by the uncontroverted evidence presented at trial. *Neison, supra* at 520, 653 A.2d at 637; *Slaseman v. Myers,* 309 Pa. Super. 537, 541, 455 A.2d 1213, 1215 (1983). "The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Charlton v. Toyota Industrial Equipment,* 714 A.2d 1043, 1045-46 (Pa. Super. 1998) (citing *Neison, supra*).

### (B) *Noneconomic Damages Award*

As a general rule, injury victims must be compensated for all that they suffer as a result of the tort of another. *Neison, supra* at 523, 653 A.2d at 638; *Boggavarapu v. Ponist,* 518 Pa. 162, 167, 542 A.2d 516, 518 (1988). In that regard, the Supreme Court of Pennsylvania has recognized "that there are injuries to which human experience teaches there is accompanying pain." *Neison, supra; Boggavarapu, supra; Hawley v. Donahoo,* 416 Pa. Super. 469, 472, 611 A.2d 311, 313 (1992). The *Boggavarapu* court noted that "[t]hose injuries are obvious in the most ordinary sense" and include "the broken bone" and the "twist of the skeletal system." *Id.* at 167, 542 A.2d at 518. Nevertheless, "[j]urors are not compelled to find pain where there was no objective injury." *Id.* at 168, 542 A.2d at 519.

"It is impermissible for a jury in a personal injury case to disregard the uncontroverted testimony from the ex-

perts for both parties that the plaintiff suffered some injury as a result of the incident in question." *Mano v. Madden,* 738 A.2d 493, 497 (Pa. Super. 1999). For example, in *Neison,* the jury awarded no damages for pain and suffering even though the defense medical expert had conceded that the plaintiff had suffered a soft tissue injury which usually would take three to five months to heal. *Neison, supra* at 519, 522, 653 A.2d at 636, 637. In affirming the trial court's grant of a new trial, the Supreme Court concluded:

"[T]he evidence offered at trial left room for disagreement as to whether the pain resulting from [plaintiff's] injuries was as severe as she claimed or whether the accident was in fact causative. However, the jury's decision to find for [plaintiff] and award no damages for pain and suffering bears no rational relationship to the evidence produced at trial. The jury's decision to disbelieve all the evidence presented during the trial defies common sense and is indeed shocking." *Id.* at 522-23, 653 A.2d at 638. (footnote omitted) Accord *Mano, supra* (holding that a new trial on the issue of damages only was warranted after a jury awarded no damages despite the fact that the defense medical expert had acknowledged that plaintiff "suffered some strain to his neck and back as a result of the accident, differing only as to the extent and duration of his injury"); *Hixson v. Barlow,* 723 A.2d 716, 717 (Pa. Super. 1999) (ordering a new trial following a zero verdict since the defense did not challenge the existence of an injury and "differed only [as] to the extent and severity of [plaintiff's] injuries"); *Craft v. Hetherly,* 700 A.2d 520, 523 (Pa. Super. 1997) (upholding the grant of a new trial following a defense verdict on the grounds that "both parties' medical experts agreed that [plaintiff] was injured as a result of the

accident, and they disagreed only to the severity and duration of her injuries").

With regard to Mrs. Fischer's injury, *i.e.,* a fractured vertebra, the holding in *Hawley, supra,* is virtually dispositive. In that case, the jury returned an award of zero damages notwithstanding the fact that the uncontroverted evidence established that the plaintiff had suffered a compression fracture of her lumbar vertebra. In reversing the trial court's denial of the injured victim's motion for a new trial, the Superior Court reasoned:

"[T]he record in the present case indicates that the existence of the fractured vertebra was not questioned by the [defendant] on cross-examination, and therefore the jury's refusal to believe in the existence of this injury was unwarranted. . . .

"While the jurors are the sole judges of credibility, and [plaintiff's] inconsistent and perhaps exaggerated testimony could have been perceived as an indication of [plaintiff's] interests of opportunity beyond pain which could dilute their belief in the existence of the occasion itself, the jury is not free to ignore an obvious injury. . . . Based on the uncontested evidence of the compression fracture, we find that [plaintiff] suffered compensable pain from a known medical source which was more than a mere transient rub of life." *Hawley,* 416 Pa. Super. at 473-74, 611 A.2d at 313-14. See also, *Neison,* 539 Pa. at 525-26, 653 A.2d at 639 ("[T]he uncontroverted medical evidence established that Ms. Neison suffered pain from a known medical source, . . . much like the compression fracture in *Hawley.* We believe that these injuries are similar in type to the 'obvious injury,' the Superior Court found in *Hawley,* and agree with the conclusion of that court that a jury cannot freely ignore evidence of obvious injury.").

Instantly, even the Troianos' medical expert testified that Mrs. Fischer suffered a compression fracture of her vertebra which, at a minimum, would have taken three months to resolve. It was likewise uncontested that the existence of the fracture had been objectively manifested by various diagnostic studies. Since the Superior Court has distinctly recognized a compression fracture of a vertebra as an objective injury which produces "compensable pain from a known medical source," *Hawley,* 416 Pa. Super. at 474, 611 A.2d at 314, the jury could not refuse to award *any* damages for pain and suffering and loss of the ability to enjoy the pleasures of life. See *Todd v. Bercini,* 371 Pa. 605, 607-608, 92 A.2d 538, 539 (1952) (ordering a new trial after a jury awarded the "exact amount of the medical bills" but no recovery "for pain, suffering and inconvenience" on the grounds that "[a] jury may not eliminate pain from wounds when all human experience proves the existence of pain"); *Rozanc v. Urbany,* 444 Pa. Super. 645, 648-49, 664 A.2d 619, 620-21 (1995) (in light of the defense expert's acknowledgment of some injury, albeit minor, the grant of a new trial was justified); *Lupkin v. Sternick,* 431 Pa. Super. 300, 306, 636 A.2d 661, 664 (1994), *affirmed,* 542 Pa. 351, 667 A.2d 13 (1995) (ordering a new trial following a zero verdict on the basis that "[a]lthough [defendant's] witness disagreed with [plaintiff's] assertions concerning the severity of the injury, he did not contest the existence of an injury").[1]

---

1. The medical evidence of Mrs. Fischer's injury is markedly distinguishable from that which was introduced in those cases in which zero awards for noneconomic damages have been affirmed, See *e.g., Catalano v. Bujak,* 537 Pa. 155, 157, 161, 642 A.2d 448, 449, 451 (1994) (finding that jury could award damages for medical expenses only, without any provision for pain and suffering, since the defense had offered evidence that the injury had been caused at work rather

Consequently, the failure of the jury to award any non-economic damages to Mrs. Fischer does not bear any reasonable relation to the uncontroverted evidence presented at trial. In contrast, the Troianos did not similarly concede that Mr. Fischer suffered a compensable injury, nor does the law regard an elbow contusion as the type of injury which must be accompanied by pain. Furthermore, unlike their acknowledgment of Mrs. Fischer's fractured vertebra, the Troianos did not agree that Mr. Fischer suffered some degree of a loss of consortium by virtue of Mrs. Fischer's injury. As the finder of fact, the jury was at liberty to reject Mr. Fischer's claims for non-economic damages and loss of consortium and thereby award no damages, particularly in the absence of any objective evidence of the same. See *Boggavarapu,* 518 Pa. at 168, 542 A.2d at 519.

Accordingly, a new trial will be granted as to Mrs. Fischer's cause of action, but denied with regard to Mr. Fischer's claims. Mrs. Fischer has requested a new trial limited to the issue of damages whereas the Troianos alternatively seek a new trial on liability as well, in the event that the motion for post-trial relief is granted. A new trial on damages only will be granted where "(1) the issue of damages is not 'intertwined' with the issue of liability; and (2) where the issue of liability has been 'fairly determined' or is 'free from doubt.' " *Kiser,* 538 Pa. at 233, 648 A.2d at 8; *Hixson,* 723 A.2d at 718. In the case at bar, the jury considered and decided the question of liability which was not intertwined with the item

---

than by defendant's conduct); *Labett v. Port Authority of Allegheny County,* 714 A.2d 522, 526 (Pa. Commw. 1998) (defense argued that plaintiff's alleged harm was the result of an unrelated incident). In the case sub judice, the Troianos agreed that the fall caused Mrs. Fischer's fractured vertebra which produced symptoms for several months.

of damages. Moreover, the Troianos had a fair opportunity to litigate the issues of negligence, contributory negligence and causation and it would be inappropriate to require the Fischers to re-litigate those matters after liability has already been established by a jury. See *Mano,* 738 A.2d at 498. Thus, a new trial will be ordered on behalf of Mrs. Fischer solely on the issue of damages.

## (C) *Delay Damages*

The Fischers have also filed a motion for delay damages seeking the assessment of prejudgment interest on their damage awards. In light of the grant of a new trial on behalf of Mrs. Fischer, her request for delay damages will be dismissed as moot. However, inasmuch as Mr. Fischer's motion for post-trial relief has been denied, his motion under Rule 238 will be considered.

A successful plaintiff may recover delay damages in the form of prejudgment interest on the jury award if the verdict is more than 125 percent of the last written settlement offer tendered by the defendant. Pa.R.C.P. 238(b)(1). Delay damages are to be calculated at a rate of interest "equal to the prime rate as listed in the first edition of the *Wall Street Journal* published for each calendar year for which the damages are awarded, plus 1 percent, not compounded." Pa.R.C.P. 238(a)(3). Although an earlier version of Rule 238 did not exclude any time periods from the delay damages computation, the current rule provides that prejudgment interest does not begin to accrue until one year after the service of original process up to the date of the verdict, excluding any periods of time during which the plaintiff caused delay of the trial. Pa.R.C.P. 238(a)(2)(ii) and (b)(2).

Rule 238 is designed to compensate a plaintiff for the delay in receiving funds that a jury has determined are

owed to the plaintiff, *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 622-23, 702 A.2d 850, 854-55 (1997); *Putt v. Yates-American Machine Co.,* 722 A.2d 217, 227 (Pa. Super. 1998), and to prevent a defendant from being unjustly enriched by keeping interest that could be earned during the litigation process on what is essentially the plaintiff's money. *Costa v. Lauderdale Beach Hotel,* 534 Pa. 154, 160, 626 A.2d 566, 569 (1993). The availability of delay damages to a prevailing plaintiff also serves to alleviate delay in the courts by encouraging defendants to settle meritorious claims as soon as reasonably possible. *Arthur v. Kuchar,* 546 Pa. 12, 18, 682 A.2d 1250, 1253 (1996); *Miller v. Hellman,* 433 Pa. Super. 539, 543, 641 A.2d 592, 594 (1994), *appeal denied,* 540 Pa. 601, 655 A.2d 990 (1995).

A defendant who opposes a motion for delay damages bears the burden of proving either that the requisite written offer has been made or that the plaintiff was responsible for periods during which the trial was delayed. *City of Pittsburgh v. Jodzis,* 147 Pa. Commw. 234, 249-50, 607 A.2d 339, 347 (1992), *appeal denied,* 533 Pa. 647, 622 A.2d 1378 (1993). As a consequence, prejudgment interest may be assessed even if the defendant is free from fault in delaying the trial, *Schrock v. Albert Einstein Medical Center,* 527 Pa. 191, 196, 589 A.2d 1103, 1106 (1991), and Rule 238 does not permit an exclusion for periods of delay which are attributable to extraneous administrative concerns or congestion of the court calendar. *Wirth v. Miller,* 398 Pa. Super. 244, 253, 580 A.2d 1154, 1159 (1990), *appeal dismissed,* 534 Pa. 278, 632 A.2d 309 (1993); *Tindal v. SEPTA,* 385 Pa. Super. 94, 101, 560 A.2d 183, 187 (1989). If a plaintiff has been found causally negligent, any prejudgment interest is to be computed based upon the molded verdict

rather than on the gross award. *Hughes v. GAF Corp.*, 364 Pa. Super. 311, 318, 528 A.2d 173, 177 (1987), *appeal denied*, 517 Pa. 623, 538 A.2d 876 (1988).

According to the docket entries in this case, the Fischers filed their complaint on February 8, 1996, and served initial process upon the Troianos on February 22, 1996. The parties have stipulated that no written settlement offer was ever made prior to trial, and as a result, Mr. Fischer's net award of $139.02 was more than 125 percent of the last written offer. However, the Troianos maintain that delay damages should not be computed for the entire period from the date of the service of initial process up to the time of the verdict on April 7, 1999, inasmuch as the Fischers or their counsel were responsible for periods of time during which the trial of this matter was delayed.

A review of the file reflects that the Fischers did not postpone the commencement of trial at any time between February 22, 1996 and the date that this case was first called for trial on September 27, 1998. However, this matter did not proceed to trial on September 27, 1998, due to a request for a continuance that was made by the Fischers. Thus, although delay damages will be assessed for the period between February 22, 1997 (one year after the service of initial process) to September 27, 1998, prejudgment interest will be precluded from September 27, 1998 until November 29, 1998, the date upon which this action was relisted for trial. See *Wirth*, 398 Pa. Super. at 254, 580 A.2d at 1159 (plaintiff's request for a continuance constituted a delay of the trial and was excludable under Rule 238).

Although scheduled for trial during the week of November 29, 1998, this litigation was never reached during the trial term due to the congested court calendar.

This matter was thereafter called for trial on January 31, 1999, but was postponed to the second week of the trial term at the request of the defense. Hence, the delay between November 29, 1998 and February 7, 1999 was not attributable to the actions of the Fischers and is, therefore, includable under Pa.R.C.P. 238.

This case was subsequently called to trial on February 7, 1999, at which time counsel for the Fischers requested a continuance due to the unavailability of the Fischers' human factors engineering expert to testify at trial. Consequently, this matter was rescheduled for trial beginning on April 3, 1999, and ultimately proceeded to trial on that date. Since the period of delay between February 7, 1999 and April 3, 1999 was caused by the continuance requested by the Fischers, it will be excluded from the delay damages calculation. *Wirth, supra.*

Accordingly, Mr. Fischer is entitled to an award of prejudgment interest on his molded verdict for the periods of time from February 22, 1997 to September 27, 1998, and November 29, 1998 to February 7, 1999. Any delay of the trial from September 27, 1998 to November 29, 1998, and February 7, 1999 to April 3, 1999, was the product of the actions of the Fischers and is excepted from the delay damages calculation. The parties are directed to submit a stipulation within the next 10 days setting forth the computation of delay damages for the foregoing time periods based upon the applicable rate of interest under Pa.R.C.P. 238(a)(3).

## ORDER

And now, January 12, 2000, upon consideration of the plaintiffs' motion for a new trial on damages only and plaintiffs' petition for delay damages under Pa.R.C.P. 238, and based upon the reasoning set forth in the fore-

going memorandum, it is hereby ordered and decreed that:

(1) The motion for a new trial on damages only is granted as to the claims of plaintiff, Stella Fischer;

(2) The motion for a new trial on damages only is denied with regard to the claims of plaintiff, Robert Fischer, for noneconomic damages and loss of consortium;

(3) The petition for delay damages under Pa.R.C.P. 238 is dismissed as moot with regard to plaintiff, Stella Fischer, who has been granted a new trial on damages only; and

(4) The petition for delay damages under Pa.R.C.P. 238 is granted as to the molded jury award on behalf of plaintiff, Robert Fischer, consistent with the calculations set forth in the foregoing memorandum.