**Joseph S. KARPIENIAK, Jr. and Joan A. Karpieniak, Husband and Wife, Appellees,**

v.

**Barry K. LOWE and Kathleen Lowe, Husband and Wife and Dawn Lowe Whitney, Appellants.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1999.

Filed Feb. 25, 2000.

Joseph N. BiFano, West Mifflin, for appellants.

Louis R. Salamon, Pittsburgh, for appellees.

Before CAVANAUGH, DEL SOLE and MONTEMURO *, JJ.

DEL SOLE, J.:

¶ 1 Appellants, Barry and Kathleen Lowe and Dawn Lowe Whitney, appeal from a Supplemental Decree entered May 7, 1998, in this equity action. We reverse.

¶ 2 The sole issue raised on appeal is whether the trial court had the power to enter the Supplemental Decree, which substantially altered its original decree, to create an easement across Appellants' property when no such relief was requested either in the complaint or at trial and no easement was included in the court's original decree.

¶ 3 A detailed recitation of the facts and procedural history is necessary to understand Appellant's claim. All parties live in the Mifflin Plan of lots in the Borough of West Mifflin. The lot plan shows several paper streets which have never been opened by the Borough. The paper street at issue here is Locust Alley, which runs north-south and abuts all parties' property to the west.

¶ 4 In 1983, Barry and Kathleen Lowe purchased 17 lots in the Mifflin Plan from the School District of the Borough of West Mifflin. In 1987, Appellees purchased four

* Retired Justice assigned to the Superior Court.

of these lots from the Lowes. Appellees' property, lots numbered 7, 8, 9, and 10, is bordered on the north by McClure Avenue, on the south by Second Street, on the east by Duquesne Avenue, and on the west by Locust Alley. McClure Avenue is a public street and the others are all paper streets. Appellants' property, lots numbered 11, 12, 13, and 14, is directly south of Appellees' property and is separated from Appellees' property by Second Street. Appellants' property is bordered on the east by Duquesne Avenue, on the west by Locust Alley, and on the south by Lange Avenue. The Lowes' home is on the southern portion of the property and their daughter Dawn and her husband David Whitney live in a mobile home on the northern portion of the property.

¶ 5 On December 7, 1993, Appellants received a quitclaim deed from the School District in which the description of the previously-purchased 17 lots was expanded to include all the paper streets. Shortly thereafter, Mr. Lowe opened a portion of Locust Alley which abuts Appellees' property. Appellees then filed a complaint in equity in which they sought to set aside the quitclaim deed, to require Appellants to restore Locust Alley to its former condition, and to obtain damages for injury to their property which was caused by opening Locust Alley.

¶ 6 After twelve days of testimony and a view of the premises, the trial court entered a decree *nisi* which provided: (1) that the quitclaim deed was void; (2) that Appellants do not have an ownership interest in or title to the paper streets named Duquesne Avenue, Locust Alley, Second Street, and Lange Avenue [1]; (3) that Appellees and all other persons whose land abuts those paper streets have title from his or her property line to the center of

the paper street and an easement by implication in those paper streets; (4) that Appellants may continue to use the road Mr. Lowe constructed along that portion of Locust Alley which "begins at a point which is immediately west of the line separating Lots 8 and 9 in the Mifflin Plan and which ends at the southerly line of that which is designated as Second Street" [2] as a means to travel to or from McClure Avenue; (5) that within 90 days, Appellants shall file a written proposal for the regrading and lowering of the elevation of Locust Alley as well as a proposal for drains to prevent discharge from Locust Alley onto Appellees' property. The decree provided time limits for a response to the proposal and commencement of the duties set forth in the proposal and further provided: "In the event that in the Response there is disagreement with any or all aspects of the Proposal, this Court retains jurisdiction of this Action in order to adjudicate as to such disagreement." Neither party filed a timely motion for posttrial relief or an appeal.

¶ 7 On January 20, 1998, Appellees requested emergency relief for what Appellees perceived to be violations of the above decree. After a hearing, Appellees' petition was denied.[3] Thereafter, Appellants filed their Engineer's Report, Appellees filed a motion to strike the report, and the court scheduled a hearing for April 17, 1998. The focus of the hearing, however, was not the motion to strike but rather the fact that Appellants, but not Appellees or any members of the general public, could continue south of Second Street and reach the public roads south of Appellants' property by using a part of Locust Alley plus a driveway built on Appellants' property. The existence of a ravine prevents the further opening of Locust Alley to the

---

1. Lange runs parallel to Second and is south of the Lowes' property.

2. The portion of Locust Alley beginning at McClure and running south to the line separating lots 8 and 9 was already cleared when Appellees purchased their property.

3. Although the order denying Appellees' petition is part of the certified record forwarded to this court, the petition itself is not, having been delivered to the trial court but not filed with the Prothonotary.

public streets south of Appellants' property. On May 8, 1998, therefore, the trial court entered a "Supplemental Decree" in which the court stated:

It was the intention of this Court when this Court entered its Decree Nisi in this Action on December 23, 1997, that Plaintiffs, Defendants and all other owners of property situate in the Mifflin Plan in the Borough of West Mifflin should have equal access – vehicular and otherwise, via Locust Alley in said Plan or via real property owned by Defendants or their successors, to a public road known as McClure Avenue which interesects [sic] with Locust Alley at the north end of Locust Alley and to the intersection of public roads known as Lee Street (Third Street) and Skylark Avenue (Mifflin Avenue) which are situate south and west of the Southerly end of Locust Alley.

The decree then granted Appellees and all other owners of real property in the Mifflin Plan an easement over Appellants' real property which Appellants had used to access the public streets south of their property.[4]

¶ 8 Appellants contend that the trial court did not have the power to substantially change its initial decree by creating an easement over their property. Appellees and the trial court maintain that an equity court has the inherent power to open, modify or set aside a final decree where equity so demands.

¶ 9 Our cases have held that, in cases involving equitable demands, a trial court may modify its order even beyond the thirty-day statutory limit set forth in 42 Pa.C.S.A. § 5505. *Jazbinsek v. Chang*, 416 Pa.Super. 300, 611 A.2d 227 (1992); *Vanleer v. Lerner*, 384 Pa.Super. 558, 559 A.2d 577 (1989). In the present case, however, it is not the time within which the trial court entered its order which leads us to reversal. Rather, we find that the trial court, in its Supplemental Decree, granted relief which was never requested and was outside the scope of the case pleaded and proven.

¶ 10 The complaint in the present case set forth essentially three causes of action. The first cause of action requested the court to quiet title to the paper streets by nullifying the 1993 deed to Appellants and declaring that Appellees have title to the center of those portions of the paper streets which abut their property. The second cause of action concerned Appellants' actions in opening that portion of Locust Alley which abuts Appellees' property. Appellees sought to enjoin Appellants from conducting any activity on that portion of Locust Alley, to require Appellants to restore Locust Alley to the condition it was in before Appellants opened it, to take whatever action is necessary to discontinue the flow of water from Locust Alley onto Appellees' property, and to compensate Appellees for the damage they suffered by reason of Appellants' conduct. In the third cause of action, Appellees alleged that Appellants threatened to cap or remove a sewer line which Appellees had installed on Duquesne Avenue and had removed Appellees' surveyor's pins along Duquesne Avenue and Second Street. Appellees sought injunctive relief to prohibit Appellants from taking any action which would interfere with Appellees' use of the sewer lines and to reinstall the surveyor's pins.

¶ 11 Our review of the complaint and the testimony taken during the trial make clear that Appellees did not want Locust Alley opened and that they preferred the "sylvan nature of the area." Appellees' Brief at 14. Appellees' property is bordered on the north by McClure Avenue, which is a public street and provides ingress and egress for Appellees. As framed by the complaint and the testimo-

---

4. Because of our disposition, we need not reach the question of whether the Chancellor can relocate a paper street onto private property and impose a burden on that property in favor of all the property owners within a recorded plan.

ny, the issue was Appellants' conduct in opening that portion of Locust Alley which abuts Appellees' property and what relief would properly compensate Appellees for this conduct. Appellees did not allege in their complaint that they needed or wanted to use Locust Alley for access and did not request any such relief. The complaint and the testimony centered on Appellants' conduct as regards only that portion of Locust Alley that abutted Appellees' property. Thus, the initial decree specifically set forth relief relating only to that portion of Locust Alley which abuts Appellees' property and made no mention of the property south of Second Street or any easement across Appellants' property.

¶ 12 An equity court may, of course, grant broader relief than that specifically requested when there is a prayer for general relief. *Lower Frederick Twp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). However, that relief must be consistent with and agreeable to the case pleaded and proven. *Id.; Dombrowski v. Philadelphia*, 431 Pa. 199, 245 A.2d 238 (1968).

¶ 13 Although most of the cases reciting this principle upheld a grant of relief which was different from that requested, the Commonwealth Court reversed a decree on this basis in *Twp. of Ridley v. Ridley Arms, Inc.*, 90 Pa.Cmwlth. 143, 494 A.2d 870 (1985). Ridley Arms, Inc., trading as Ridley Brook Associates, brought an equity action challenging the constitutionality of the Township's waste removal ordinance. Although Ridley Brook paid the Township collection fees, it continued to use its own private contractor which collected trash more frequently and thus did not require the number of dumpsters required by the Township. Although the trial court found the ordinance constitutional, it ordered the Township to pay Ridley Brook the amount paid for the private trash collection services. On appeal,

the Township argued that the equity court did not have the power to grant reimbursement where Ridley Brook did not claim reimbursement either in its statement of its cause of action or its prayer for relief in the complaint. Commonwealth Court agreed and reversed that portion of the order.[5]

¶ 14 Similarly, in the present case Appellees neither pleaded nor proved the necessity or desire for an easement across Appellants' property. The complaint and testimony was confined to that portion of Locust Alley which abuts Appellees' property. Moreover, the relief requested was not that the remainder of Locust Alley be opened but rather that Locust Alley be returned to its original condition. We therefore vacate the Supplemental Decree granting an easement across Appellants' property.

¶ 15 Decree vacated. Jurisdiction relinquished.

---

**5.** Commonwealth Court affirmed the decree in all other respects. On Ridley Brook's appeal to the Supreme Court, the remainder of

the decree was reversed. *Ridley Arms, Inc. v. Twp. of Ridley*, 515 Pa. 542, 531 A.2d 414 (1987).